HUGH A. CREGG, trustee in bankruptcy, *vs.* PURITAN TRUST COMPANY.

Essex.      November 15, 1920. — January 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Bankruptcy,* Unlawful preference. *Evidence,* Of unlawful preference, Failure to produce books and records, Presumptions and burden of proof

At the trial of an action by a trustee in bankruptcy against a bank to recover the amount of a payment on a note alleged to have been made by the bankrupt to the defendant as an unlawful preference, under § 60, a, b, of the national bankruptcy act as amended, within four months of the filing of the bankruptcy petition, the evidence tended to show that the bankrupt conducted a business in Lawrence, that in 1910 he had given to the defendant bank at its place of business in Boston a note for $10,000 which had been renewed every six months and upon which partial payments had been made until, at the last renewal in November, 1915, $6,500 was due and that the renewal note then given called for payment on May 29, 1916; that the payment to the defendant which the plaintiff contended was an unlawful preference was made on April 11, 1916; that at that time there had been a fire in the bankrupt's place of business and he owed his creditors $11,500 and had as assets stock in trade worth $750 and cash in the sum of $5,000, which was in a bank in Lawrence and which he had transferred to the name of his father as his agent; that his creditors other than the defendant were pressing him for payment; that then he paid to the defendant on account of his note $5,000 by a check of his agent upon the Lawrence bank, the payment being made at the defendant's note window in Boston and without any explanation. There was no evidence that the defendant had knowledge of the fire in the bankrupt's place of business or of any of the facts as to his financial

condition. *Held,* that, while the facts in evidence reasonably might be found to have aroused suspicion on the part of the defendant of the bankrupt's motive in making the payment, it fell short of warranting a finding that the defendant had reasonable cause to believe that, at the time the payment was made, the debtor was insolvent.

At the trial above described, it appeared that the plaintiff had "duly demanded" of the defendant all books and accounts showing all transactions between the defendant and the bankrupt, had attempted to summon the defendant's treasurer *duces tecum* with the books, but had been unable to do so because of that officer's illness; that he had summoned, *duces tecum,* the defendant's assistant treasurer and had demanded the books and accounts at the trial and that the defendant had refused to produce them. *Held,* that such refusal to produce was not in itself evidence of the contents of the documents nor that the defendant, when it received the payment from the bankrupt, had reasonable ground to believe that it was receiving a preference.

CONTRACT, under § 60, a, b, of the national bankruptcy act, as amended, by the trustee in bankruptcy of Daniel F. McCarthy, junior, for $5,000 alleged to have been paid by the bankrupt to the defendant as an unlawful preference within four months of the filing of the bankruptcy petition. Writ dated June 23, 1917.

In the Superior Court the action was tried before *Bell,* J. Material evidence is described in the opinion. At the close of the evidence, on motion of the defendant, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

U. S. St. 1898, c. 541, § 60 a, b, as amended by U. S. St. 1903, c. 487, § 13, and U. S. St. 1910, c. 412, § 11, read as follows:

"Sec. 60. Preferred Creditors. — a A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required

"b If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee,

and he may recover the property or its value from such person. And, for the purpose of such recovery, any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

*E. J. Ford*, for the plaintiff.

*I. W. Sargent*, for the defendant.

PIERCE, J. This is an action at law brought by the plaintiff as trustee in bankruptcy of Daniel F. McCarthy, Jr., to recover a sum of money which the bankrupt had paid, within four months prior to the filing of the petition in bankruptcy, in part payment of an unmatured note of the bankrupt which was then held by the defendant. It is the claim of the plaintiff that the effect of the payment was a violation of the United States bankruptcy act of 1898, c. 541, § 60 a, b, as amended, in that the defendant obtained a greater precentage of its debt than any other creditor of the bankrupt of the same class, and in that the said transfer then operated as a preference, the defendant and its agents then having reasonable cause to believe that the enforcement of said transfer would effect a preference. On motion of the defendant the trial judge ordered a verdict for the defendant.

The note upon which a partial payment was made by the bankrupt had been running from November 26, 1910. It was originally for $10,000, and had been renewed every six months, the last renewal being on November 29, 1915. The debt of the original note reduced by successive payments was $6,500 on November 29, 1915, and the renewal note of that date called for the payment of that sum on May 29, 1916. On April 11, 1916, the bankrupt made the payment in question at the note window of the defendant bank. He made no explanation to the defendant whatever of the payment on account before the maturity of the note, did not know whom he saw at the window, and did not make any statement as to when the rest of the note would be paid

The bankrupt lived and carried on business in Lawrence, while the defendant bank was located and carried on its business in Boston. There was evidence that a fire had occurred in the bankrupt's place of business on February 28, 1916; that on April 11, 1916, he was behind in his bills and was receiving demands from creditors for payments which were not made; that drafts of

considerable size had been made on him through his bank, the Merchants Trust Company at Lawrence; that they were unpaid; that his account at the Merchants Trust Company had been transferred to the name of his father as his agent; that his assets before the payment on the note to the defendant on April 11, 1916, were worth in stock and trade $750 and $5,000 in cash; and that his liabilities were $11,500. There was no evidence that the defendant had knowledge of the fire, of the assets and liabilities of the bankrupt or of any of the foregoing facts other than attendant upon the receipt of the payment. It also was in evidence that the payment to the defendant was made with a check signed by the agent of the bankrupt drawn on the Merchants Trust Company.

The fact that the note was partially paid before it was due, the fact that the payment on account was larger than the sum of all other previous partial payments, and the fact that the payment was made with a check of an agent, taken together might reasonably have aroused suspicion of the motive which influenced the bankrupt to make the payment, but in the opinion of the court falls short of the probative weight in evidence which would warrant a finding that the defendant had reasonable cause to believe the bankrupt was insolvent when the payment on the note was made.

"The plaintiff duly demanded that all books and accounts showing all transactions between the defendant and the bankrupt be produced at the trial, and duly asked for them at the trial. The plaintiff also summoned the man who was assistant treasurer of the defendant bank at the time of the payment, but not in the employ of the defendant at the time of trial, ordering him by a *duces tecum* to bring with him all books and accounts as above. The plaintiff showed also, that he had attempted to summon the man who was treasurer of the defendant corporation at said time, and was unable to do so, because he was ill. No books or accounts were produced. The assistant treasurer testified that he had made no effort to procure them, nor, so far as he knew, had any one else, and that they were in the vault of the Tremont Trust Company at Boston." The failure of the defendant to produce its books and accounts when summoned by a subpœna *duces tecum* conferred authority on the court to compel that production by proper process, and authorized the plaintiff to introduce parol

evidence of the contents of such books and records. *Bull* v. *Loveland,* 10 Pick. 9, 14. *Bemis* v. *Charles,* 1 Met. 440, 443. *Kincaide* v. *Cavanagh,* 198 Mass. 34. A like result follows upon the failure of a party at the trial to produce on reasonable demand writings which are material to the issue. The failure to produce documents on demand at a trial or on the subpœna *duces tecum,* is not in itself evidence of the alleged contents of such documents.

*Exceptions overruled.*